UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TERRY P. (anonymous),

                Petitioner,

        -against-

MAUREEN BOSCO, Executive Director of
Central New York Psychiatric Center,

                Respondent.
------------------------------------------------------------ x

**MEMORANDUM AND ORDER**
14-cv-5907 (DLI)

**DORA L. IRIZARRY, Chief United States District Judge:**

Petitioner Terry P. ("Petitioner") brings this timely petition for a writ of *habeas corpus* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, challenging his civil confinement. Pet. for Writ of *Habeas Corpus*, Docket Entry (Dkt. Entry) No. 1. After completing a prison sentence and following a bench trial to determine his civil commitment held in New York Supreme Court, Queens County, Petitioner was committed involuntarily under New York Mental Hygiene Law § 10.01. Specifically, the trial court found that Petitioner had a qualifying "mental abnormality" justifying civil management. A. 419.[1] Petitioner appealed this determination to the Appellate Division, which affirmed the order of commitment. The New York State Court of Appeals then denied leave to appeal. Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. For the reasons set forth below, the Petition is denied in its entirety.

---

[1] Citations beginning with "A." refer to the Joint Appendix originally submitted on direct appeal to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), which is attached to the Petition, Dkt. Entry No. 1-4 to 1-5, and to Respondent's Memorandum of Law in Opposition as Exhibit A, Dkt. Entry No. 9-3 to 9-7.

## BACKGROUND

In 1979, Petitioner was arrested for attacking an older female. Petitioner accosted the victim in her car, beat her unconscious, and twice raped and sodomized her. A. 11. A jury convicted Petitioner after trial of sodomy in the first degree, rape in the first degree, robbery in the second degree, and sexual abuse in the first degree. *Id.* at 12. Petitioner was sentenced to one hundred (100) to three hundred (300) months of imprisonment. *Id.* Petitioner was released on parole on June 21, 1988. *Id.*

Eighty-four (84) days after being paroled, Petitioner "accosted an older female, beat her severely in her face and body, and forced her into her car." *Id.* at 11. Petitioner "took her money and forced her to remove her blouse and bra," then he "fondled her breasts and forced her to fondle his penis." *Id.* The victim "suffered fractures in her nose, jaw and multiple ribs." *Id.* Petitioner pled guilty to robbery in the first degree and was sentenced to ninety-six (96) to one hundred and ninety-two (192) months of incarceration. *Id.* Prior to Petitioner's scheduled release from prison, the New York State Attorney General ("Attorney General" or the "State") filed a petition seeking Petitioner's civil commitment as a sexually dangerous offender. *See*, *Id.* at 7, 11, 18.

### A. Civil Commitment Proceedings

Pursuant to the Attorney General's request, a four-day bench trial was held in New York Supreme Court, Queens County to determine whether Petitioner suffered from a "mental abnormality." *Id.* at 52-55. At this and in all subsequent proceedings, Petitioner was represented by court appointed counsel from Mental Hygiene Legal Services.

Two psychologists testified as expert witnesses for the State: Dr. Jacob E. Hadden and Dr. Stuart Kirschner. Both psychologists concluded that Petitioner suffered from a mental abnormality as defined by the pertinent statute, *i.e.*, a condition that predisposes him to commit sex offenses

and results in serious difficulty controlling his urges. *Id.* at 229, 306-07. Dr. Hadden diagnosed Petitioner with sexual sadism, antisocial personality disorder ("ASPD"), and psychopathy. *Id.* at 216. Dr. Kirschner diagnosed Petitioner with sexual sadism, ASPD, paraphilia not otherwise specified ("NOS"), and polysubstance abuse. *Id.* at 302-06.

Petitioner called his own expert witness, psychologist Dr. Leonard Bard. *Id.* at 69-76. Dr. Bard found that Petitioner did not "meet the criteria for a mental abnormality," because he "does not suffer [from] any psychological or psychiatric diagnosis that is related to a serious difficulty controlling sexual impulses or a predisposition to commit sexual offenses." *Id.* at 106, 108-09. The only diagnosis that Dr. Bard thought "may have fit would have been antisocial personality disorder." *Id.* at 106. That said, Dr. Bard determined that this diagnosis no longer fit since Petitioner had aged out of his antisocial behavior. *Id.* at 108-09. Petitioner also testified and stated that he was not sexually aroused by violence, suffering, or humiliation. *Id.* at 339-43.

Crediting the testimony of Dr. Hadden and Dr. Kirschner, the trial court found that the State had "shown by clear and convincing evidence that [Petitioner] suffers from a mental abnormality in that he has a condition that predisposes him to commit sex offenses and results in his having serious difficulty in controlling that conduct." *Id.* at 419. Specifically, the court found that Petitioner "suffers from antisocial personality disorder with aspects of sexual sadism and other aspects of sexual deviance associated with his random acts of violence." *Id.* at 419. On December 1, 2011, the trial court ordered Petitioner's civil commitment pursuant to New York Mental Hygiene Law § 10.01.

### B. Direct Appeal

On direct appeal to the Appellate Division, Petitioner argued that the trial court's determination that he: (1) suffered from a "mental abnormality," and (2) was a "dangerous sex

3

offender requiring confinement" both were against the weight of the evidence. Petitioner claimed that the trial court's finding that he had ASPD with "aspects of sexual sadism" did not distinguish him from the typical dangerous recidivist or meet the definition of a "mental abnormality." *See*, Pet'r's Br. at 38-62, Dkt. Entry No. 1-2. While these arguments mainly were made by reference to state statute and caselaw, Petitioner's counsel also relied on the United States Supreme Court's decisions in *Kansas v. Crane*, 534 U.S. 407 (2002), *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Foucha v. Louisiana*, 504 U.S. 71 (1992). Petitioner asserted that, pursuant to this precedent, "[i]n order to pass constitutional muster . . . a mental abnormality must be a 'serious mental disorder' that is 'sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.'" Pet'r's Br. at 43-44 (quoting *Crane*, 534 U.S. at 412-13). The Attorney General countered that the evidence supported the trial court's findings that Petitioner had a mental abnormality and was a dangerous sex offender requiring confinement. Br. for State Resp't, Dkt. Entry No. 1-2, at 19-27. The Attorney General did not address Petitioner's federal constitutional arguments or the Supreme Court decisions cited by his counsel. *See*, *Id.*

The Appellate Division summarily rejected Petitioner's claims. *See*, *State v. Terry P.*, 109 A.D.3d 934 (2d Dep't 2013). First, the Appellate Division held that, "[t]he Supreme Court's determination that the State demonstrated, by clear and convincing evidence, that the appellant suffers from a 'mental abnormality' within the meaning of Mental Hygiene Law § 10.03(i) was warranted by the facts." *Id.* at 935 (citations omitted). The Appellate Division then held that, "clear and convincing evidence supports the Supreme Court's finding that the appellant is a dangerous sex offender requiring confinement." *Id.* While the appellate court cited several cases

in support of these conclusions, all of them were prior Appellate Division decisions using similarly conclusory language that did not address federal constitutional claims.

Petitioner's counsel subsequently filed an application for leave to appeal the Appellate Division's decision with the New York State Court of Appeals.  *See*, Motion for Leave to Appeal, Dkt. Entry No. 9-10.  In the accompanying brief, Petitioner made substantially the same arguments raised in his initial appellate brief.  Petitioner first argued that a judicial finding that someone "'suffers from antisocial personality with aspect of sexual sadism' . . . is inadequate to distinguish [Petitioner] from an ordinary criminal recidivist so as to find him eligible for civil management." Br. for Pet'r, Dkt. Entry No. 9-10, at 10.  Petitioner again argued that *Crane* and *Hendricks* set forth a constitutional requirement that a civil commitment order can be based only on a finding of a mental abnormality that is sufficient to distinguish someone found to be a sexually dangerous offender "from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* at 13 (quoting *Crane*, 534 U.S. at 412-13); *See also*, *Id.* at 27.  The Court of Appeals denied Petitioner leave to appeal.  *See*, Dkt. Entry No. 9-10, at 98-99.  Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.  Through the same counsel, he filed the present petition.

## **DISCUSSION**

Petitioner contends he is entitled to relief claiming that the trial court's civil commitment decision was contrary to established federal law because it did not distinguish him from a typical recidivist convicted in an ordinary criminal case as required under *Crane*.  *See*, Pet'r's Mem. of Law, Dkt. Entry No. 1-1, at 1-2.  In response, the State argues that Petitioner's claim is unexhausted and procedurally defaulted.  Alternatively, the State also contends that the Appellate Division's decision was not contrary to established federal law.  *See,* Mem. of Law in Opp'n to

the Pet. for a Writ of *Habeas Corpus*, Dkt. Entry No. 9-1, at 20-30. For the reasons set forth below, the Court finds Petitioner's arguments lack merit and the Petition is denied in its entirety.

### A. Petitioner raised and exhausted his federal constitutional claim on appeal.

At the outset, the Court concludes that Petitioner exhausted his federal constitutional claim during the underlying state court appellate proceedings. A *habeas* petitioner must exhaust the remedies available in state court or provide a justification for failing to do so before seeking relief in federal court. *See*, 28 U.S.C. § 2254(b)(1). To do so, a petitioner "must 'fairly present' his [federal constitutional] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). This requires "inform[ing] the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*). A petitioner can satisfy this requirement "in a number of ways," even without citing a specific constitutional provision. *Id.* at 193; *Ramirez v. Att'y Gen.*, 280 F.3d 87, 94-95 (2d Cir. 2001). One way is "reliance on pertinent federal cases employing constitutional analysis." *Daye*, 696 F.2d at 194.

Petitioner fairly presented his federal constitutional claim to the Appellate Division by arguing that the Constitution requires that, for a person to be involuntarily committed as a sexually dangerous offender, there must be proof of a "'serious mental illness, abnormality, or disorder'" that is sufficient to distinguish him "'from the dangerous but typical recidivist convicted in an ordinary criminal case.'" Pet'r's Br. at 43-44 (quoting *Crane*, 534 U.S. at 412–13); *See also*, *Id.* at 55-56. While he did not cite a specific constitutional provision, he relied on and discussed three Supreme Court cases for the proposition: *Kansas v. Crane*, 534 U.S. 407 (2002), *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Foucha v. Louisiana*, 504 U.S. 71 (1992). Pet'r's Br. at 43-44. Petitioner then presented this Constitutional argument relying on the same Supreme Court

cases in his application for leave to appeal to the New York State Court of Appeals. *See*, Mot. for Leave to Appeal, Br. for Pet'r, Dkt. Entry No. 9-10, at 13-14, 27. In sum, Petitioner fairly presented his federal constitutional claim to the state courts, "inform[ing] the state court[s] of both the factual and the legal premises of the claim he asserts in federal court," and "rel[ying] on pertinent federal cases employing constitutional analysis." *Daye*, 696 F.2d at 191, 194; *See also*, *Williams v. Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993); *Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir. 1990). Thus, Petitioner satisfied the requirement that he exhaust his state remedies before bringing this *habeas* petition.

B. **The Appellate Division's decision was an "adjudication on the merits."**

As Petitioner's claim is not procedurally defaulted, the next question for this Court is what standard of review to apply. A petition for a writ of *habeas corpus* for someone who is involuntarily civilly committed under state proceedings is properly brought under 28 U.S.C. § 2254, and, thus, the state court's decision ordinarily is subject to highly deferential review under AEDPA. *See*, *Richard S. v. Carpinello*, 589 F.3d 75 (2d Cir. 2009). A federal court can grant relief under AEDPA only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d). This deferential standard of review applies only to claims "adjudicated on the merits in State court proceedings." *Id.*

However, Second Circuit and Supreme Court precedent establishes that AEDPA deference does not apply to claims not adjudicated on the merits by state courts because they were "inadvertently overlooked;" such claims instead are subject to *de novo* review. *Johnson v.*

*Williams*, 568 U.S. 289, 303 (2013); *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002). The Supreme Court has clarified that, even when state court decisions explicitly reject some claims, but do not address the federal constitutional claim that is the basis for a *habeas* petition, there is a "strong but rebuttable presumption" that the federal claim was in fact adjudicated on the merits. *Johnson*, 568 U.S. at 301.

Here, Petitioner fails to rebut the presumption that the state court's decision was an adjudication on the merits of the federal constitutional claim. Petitioner effectively concedes that the state court's decision "was an adjudication on the merits." *See*, Pet'r's Mem. of Law, Dkt. Entry No. 1-1, at 8-11 (reciting the standard of review for claims that have "been adjudicated on the merits in the state court"). Notably, Petitioner's state law and federal constitutional claims are analogous. Indeed, as in *Johnson*, Petitioner effectively "treated [his] state and federal claims as interchangeable" in the state court proceedings. *Johnson*, 568 U.S. at 304. Thus, as in *Johnson*, it is unlikely that the state court "decided one while overlooking the other." *Id.* As a result, Petitioner has failed to rebut the strong presumption that the Appellate Division adjudicated his federal constitutional claim on the merits. Accordingly, Petitioner's claims are subject to the highly deferential standard under AEDPA.

    **C.**     **Fairminded jurists could conclude that Petitioner was sufficiently distinguished from the "dangerous but typical criminal recidivist," as required by *Crane*.**

Under AEDPA, a federal court can grant *habeas* relief to a person in custody "pursuant to the judgment of a State court" only if the state court "adjudication of the claim" either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence . . . ." 28 U.S.C. § 2254(d). Petitioner invokes only Section 2254(d)(1) contending that

8

the Appellate Division's decision was "an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court." Pet'r's Mem. of Law at 24.

"In order for a state court's decision to be an unreasonable application of [clearly established Supreme Court] case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728, *reh'g denied*, 138 S. Ct. 35 (2017) (quoting *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)). Thus, "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102. Moreover, the more general a rule is, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. As a result, this is a difficult standard to meet. *See*, *LeBlanc*, 137 S. Ct. at 1728.

AEDPA also requires that the factual findings made by a state court "shall be presumed to be correct" unless the petitioner rebuts this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). When reviewing state court proceedings, federal courts are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. *See*, *Woods*, 135 S. Ct. at 1376.

Here, Petitioner does not find fault with the trial court proceedings nor does he rebut the factual findings of the state court. Instead, he disagrees with the trial court's conclusions from the

9

facts, *i.e.*, that Petitioner suffers from ASPD "with aspects of sexual sadism," which distinguish him from a "dangerous but typical recidivist." Pet'r's Mem. of Law at 15-19. Specifically, Petitioner maintains that the trial court's finding that he suffers from ASPD "with aspects of sexual sadism," does not correspond to a diagnosis generally recognized by the psychiatric community. *See*, *Id.* Petitioner also contends that a finding that "mere aspects" of a potentially qualifying disorder, such as sexual sadism, is "an inadequate basis upon which to conclude that Petitioner has a mental abnormality that distinguishes him from a typical recidivist." *Id.* at 19-24. Both arguments rely on the Supreme Court's decision in *Crane*. However, a review of *Crane* and the other cases relied on by Petitioner reveals that the decisions of the trial court and Appellate Division were not "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Crane*, the Supreme Court dealt with a challenge to Kansas's Sexually Violent Predator Act. Crane was "a previously convicted sexual offender who, according to at least one of the State's psychiatric witnesses, suffers from both exhibitionism and antisocial personality disorder." *Crane,* 534 U.S. at 411. The Supreme Court held that there is no constitutional requirement that a State show that a person has a "total or complete lack of control" to commit civilly the individual, since "an absolutist approach is unworkable." *Id.* The Court made clear that the Constitution requires that a dangerous sexual offender subject to civil commitment must be distinguished "'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.' That distinction is necessary lest 'civil commitment' become a 'mechanism for retribution or general deterrence'—functions properly those of criminal law, not civil commitment." *Id.* (quoting *Hendricks*, 521 U.S. at 360, 372-73).

While the Court did not set out a specific test for making this distinction, it noted that "[t]he presence of what the psychiatric profession itself classifie[d] . . . as a serious mental disorder helped to make that distinction in *Hendricks*. And a critical distinguishing feature of that 'serious . . . disorder' there consisted of a special and serious lack of ability to control behavior." *Id.* at 412-13 (alterations in original). The Court noted specifically that, "in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior." *Id.* at 413. The Constitution requires only that this proof, along with factors such "as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* (citing *Hendricks*, 521 U.S. at 357-58).

The trial court sufficiently distinguished Petitioner from a "dangerous but typical criminal recidivist" as required under *Crane*. Contrary to Petitioner's argument, there is no Supreme Court case that clearly establishes that ASPD alone is not a sufficient predicate for civil commitment. There also is no requirement that the trial court's findings match precisely the diagnostic categories employed by the psychiatric profession. *See*, *Crane*, 534 U.S. at 413-14. All that *Crane* requires for someone to be committed as a sexually violent offender are findings of "serious mental illness, abnormality, or disorder" and "serious difficulty in controlling behavior." *Id.* at 413. This rule is extremely general. As such, courts have much latitude in determining how to apply it to a given set of facts. *See*, *Yarborough*, 541 U.S. at 664. This is particularly true in cases like the instant one given the difficulty of distinguishing between an individual who has serious difficulty controlling his sexual offending impulses because of an underlying "mental illness, abnormality,

11

or disorder" and the "dangerous but typical criminal recidivist," who simply does not wish to stop reoffending. *Crane*, 534 U.S. at 413.

Moreover, it is "not the diagnosis alone, in the abstract, that is the focus in assessing the constitutionality of a civil commitment" but "how the mental disorder manifests itself in the individual, particularly as regards its effect on his ability to control his behavior." *Brown v. Watters*, 599 F.3d 602, 614 (7th Cir. 2010) (holding on *de novo* review that the constitution did not bar Wisconsin from civilly committing a man diagnosed with ASPD and "paraphilia NOS nonconsent" as a sexually violent predator). Thus, "[i]f for the offender in question, the condition of [ASPD] is serious enough to cause an inability to control sexually violent behavior, the standard set by the Supreme Court would be satisfied." *Id.* at 614-15. In other words, "a diagnostic label such as [ASPD], while relevant, will rarely be dispositive in determining whether an impairment is sufficiently substantial to seriously impair volition. Instead, it is the manner in which the condition 'manifests itself in the individual' that will determine whether a particular commitment decision" comports with due process. *Young v. Murphy*, 615 F.3d 59, 66 (1st Cir. 2010) (quoting *Brown*, 599 F.3d at 614) (rejecting a challenge under AEDPA to the civil commitment of a man diagnosed with ASPD as a sexually dangerous individual).

Consistent with the foregoing analysis, the trial court expressly found that Petitioner suffers from "a mental abnormality in that he has a condition that predisposes him to commit sex offenses and results in his having serious difficulty in controlling that conduct." A. 419. The trial court based that determination on the underlying testimony, specifically crediting the State's expert witnesses and rejecting that of Petitioner's expert. As such, the trial court made a specific finding that Petitioner's mental disorder causes his inability to control his behavior so as to justify civil commitment. Such a finding is sufficient to distinguish Petitioner from the "dangerous by typical

12

criminal recidivist" as required under Crane. This finding is presumed correct absent clear and convincing evidence to the contrary. *See*, *Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003). Petitioner has failed to present such evidence.

The requirements of AEDA reflect "a presumption that state courts know and the follow the law." *Woods*, 135 S. Ct. at 1376 (citing *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam). The decisions of state courts must be afforded due respect by federal courts, which may overturn the state court decision "when there could be no reasonable dispute that they were wrong." *Id.* A review of the record here demonstrates that the due process requirements of *Crane*, *Hendricks*, and *Foucha* were followed by the state court. Notably, in *State v. Floyd Y.*, decided after Petitioner's case, the New York State Court of Appeals held that the scheme for civil commitment of sexually dangerous offenders established in Article 10 of New York Mental Hygiene Law "falls squarely within the substantive due process requirements for civil process as stated by *Hendricks* and *Crane*." 22 N.Y.3d 95, 104 (2013). The state court's ruling here was not objectively unreasonable or "so lacking in justification" as to constitute "error well understood and comprehended in existing law beyond any possibility for fairminded agreement." *Harrington*, 562 U.S. at 102. Accordingly, the petition is denied in its entirety.

## **CONCLUSION**

For the reasons set forth above, the petition for *habeas corpus* relief under 28 U.S.C. § 2254 is denied. Petitioner is denied a certificate of appealability as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *See*, Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 336; *Luciadore v. N.Y. State Div. of Parole*, 209 F. 3d 107, 112 (2d Cir. 2000).

SO ORDERED.

Dated: Brooklyn, New York
      July 25, 2019

/s/
DORA L. IRIZARRY
Chief Judge